**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| MAX REED, II, | |
| Petitioner, | Case No. 2:17-cv-00648-RFB-NJK |
| v. | **ORDER** |
| JO GENTRY, *et al.*, | |
| Respondents. | |

Respondents filed a Motion to Dismiss Petitioner Max Reed, II's Second Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C § 2254 (ECF No. 101). Thereafter, Reed filed a Motion for Evidentiary Hearing (ECF No. 112). First, the Court concludes that Reed is entitled to equitable tolling of the federal statute of limitations up to the time he filed his First Amended Petition. Second, the Court denies both motions without prejudice and grants Reed an opportunity to file a motion for stay.

### I.    BACKGROUND

In November 2012, in the Second Judicial District Court of Washoe County, Nevada, a jury convicted Reed of first-degree murder with use of a deadly weapon. See ECF No. 50-7. Two masked men robbed Kristopher Nelson and Kenny Clark of drugs and money, and Reed was convicted of killing Nelson. See ECF No. 89. The jury sentenced Reed to two consecutive terms of 20 to 50 years. See ECF No. 50-8. Judgment of conviction was entered on November 2, 2012. See ECF No. 50-3. The Nevada Supreme Court affirmed Reed's conviction in July 2014; it also affirmed the denial of his state, post-conviction habeas corpus petition in April 2016. See ECF

Nos. 51-19, 53-17.

Reed dispatched his federal habeas petition for filing in February 2017. See ECF No. 9. The Court granted his motion for appointment of counsel, and Reed ultimately filed a Second Amended Petition through the Federal Public Defender on February 9, 2024. See ECF No. 89. The Second Amended Petition raises the following grounds:

> Ground 1: Reed's conviction was based on uncorrected false material evidence in violation of his Fourteenth Amendment due process rights.
>
> Ground 2: The instructions failed to instruct the jury that they must find that Reed acted with specific criminal intent in order to convict, in violation of his Fifth, Sixth, and Fourteenth Amendment due process and fair trial rights.
>
> Ground 3: Prosecutors committed misconduct in violation of Reed's Fifth, Sixth, and Fourteenth Amendment rights by:
>   A. Failing to disclose evidence in line with their *Brady* obligations; and
>   B. Failing to preserve exculpatory evidence and altering evidence that had possible evidentiary value.
>
> Ground 4: Reed was denied his Fifth, Sixth, and Fourteenth Amendment right to have a trial jury selected from a fair cross-section of society.
>
> Ground 5: The high risk of judicial bias violated Reed's Fifth, Sixth, and Fourteenth Amendment rights to due process.
>
> Ground 6: Reed was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution.
>
> Ground 7: The trial court did not replace Reed's direct appeal counsel when a conflict of interest developed in violation of his due process rights.
>
> Ground 8: Appellate counsel rendered ineffective assistance.
>
> Ground 9: Insufficient evidence was presented to convict Reed of first-degree murder with use of a deadly weapon in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights to due process, equal protection, and a reliable sentence.
>
> Ground 10: The trial court erred by not granting a new trial, in violation of his rights to due process, equal protection, and a reliable sentence.
>
> Ground 11: Reed was not provided adequate resources to prepare his own defense, in violation of his rights to due process, equal protection, and a

reliable sentence.

Ground 12: Reed was not provided adequate discovery and/or exculpatory materials pursuant to *Brady v. Maryland*, in violation of his rights to due process, equal protection, and a reliable sentence.

Ground 13: The district court allowed a juror who had openly expressed his bias against Reed to remain on the jury in violation of his rights to due process, equal protection, and a reliable sentence.

Ground 14: The court admitted hearsay statements of a co-defendant, violating Reed's rights to due process, equal protection, and a reliable sentence.

Ground 15: The court allowed the state to introduce the preliminary hearing transcript of a key state's witness, while not allowing Reed to use a videotaped statement for impeachment of the same witness, in violation of his rights to due process, equal protection, and a reliable sentence.

Ground 16: The court allowed a state's witness to vouch for the credibility of another state's witness who was not subject to cross-examination at trial, in violation of Reed's rights to due process, equal protection, and a reliable sentence.

Ground 17: The cumulative effect of the errors at trial violated Reed's rights to due process, equal protection, and a reliable sentence.

ECF No. 89 at 29–74.

Respondents have filed the instant Motion to Dismiss, arguing that all grounds are untimely, unexhausted, and/or non-cognizable. See ECF Nos. 89, 101.[1] More than eight months later, Reed filed an opposition to the Motion as well as a Motion for Evidentiary Hearing. See ECF Nos. 110, 112. Respondents oppose an evidentiary hearing. See ECF No. 123.[2] The Court's Order follows.

///

///

///

///

---

[1] The docket shows the motion at ECF No. 98, but Respondents filed a corrected image at ECF No. 101.
[2] Respondents filed a reply in support of the Motion to Dismiss. ECF No. 122. Reed filed a reply in support of the Motion for Evidentiary Hearing. ECF No. 124.

1        II.    **DISCUSSION**

2                **A.  THE SECOND AMENDED PETITION IS UNTIMELY**

3        The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a one-year statute

4   of limitations on the filing of federal habeas corpus petitions. See 28 U.S.C. § 2244(d). That

5   limitations period is tolled when a properly filed application for state, post-conviction relief, or

6   other collateral review with respect to the pertinent judgment or claim, is pending. See 28 U.S.C.

7   § 2244(d)(2). The Parties do not dispute that Reed timely filed a *pro se* petition in February 2017.

8   See ECF Nos. 101, 110, 122. Reed agrees that the Second Amended Petition is untimely by several

9   years. See ECF No. 110 at 18–27. Thus, Reed needs to show he is entitled to equitable tolling of

10  the limitations period or that he is actually innocent.

11               **B.  EQUITABLE TOLLING**

12                    **1.  *Legal Standard***

13       Reed argues that he is entitled to equitable tolling of the statute of limitations. A petitioner

14  may be entitled to equitable tolling of the AEDPA limitations period if he can show "(1) that he

15  has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his

16  way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (citation and

17  quotation marks omitted). An "external force"—not mere "oversight, miscalculation, or

18  negligence"—must have caused the untimeliness. See Velasquez v. Kirkland, 639 F.3d 964, 969

19  (9th Cir. 2011) (citation omitted). In addition, a causal relationship must exist between the

20  extraordinary circumstance and the late filing. See, e.g., Bryant v. Ariz. Att'y Gen., 499 F.3d 1056,

21  1061 (9th Cir. 2007). Equitable tolling is "unavailable in most cases," Miles v. Prunty, 187 F.3d

22  1104, 1107 (9th Cir. 1999) and "the threshold necessary to trigger equitable tolling . . . is very

23  high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002

24  (citation omitted). A petitioner "must show that he has been reasonably diligent in pursuing his

25  rights not only while an impediment to filing caused by an extraordinary circumstance existed, but

26  before and after as well, up to the time for filing his claim in federal court." Smith v. Davis, 953

27  F.3d 582, 598–599 (9th Cir. 2020).

28  ///

1

### 2. *Analysis*

Reed argues that he is entitled to equitable tolling until December 15, 2017, when he filed his First Amended Petition. See ECF No. 110 at 27. He argues that both his state appellate attorney and prison staff were external impediments that prevented him from timely filing his federal petition. He says that his original petition contains no claims because his appellate attorney and prison staff thwarted his efforts to obtain his legal materials and case file. He points out that along with his "bare" original petition he submitted a motion to stay. See ECF No. 1-2. In that motion, he stated that he had no hard copy of his trial transcripts, only a CD-ROM, so he had to view the transcripts on the law library computer. He said he had difficulty using the law library computer, that law library access was limited to two-and-a-half hours a week, and that the untrained, inmate legal assistants were not able to aid him with legal research. He said he was often unable to access the one computer that could play the CD-ROM because law library workers had priority computer access and because his unit officer would release his unit late and other inmates got to the computer first. He stated that he was forced to choose between working on a civil rights suit that he had filed and his habeas petition. He alleges that Nevada Department of Corrections ("NDOC")'s policies and the actions of NDOC staff impeded his habeas efforts, "resulting in the loss/destruction of key discovery materials, work product and vital media evidence" necessary to litigate his federal petition. See id. at 4. He alleges that without his discovery materials he was unable to support his claims of actual innocence, Brady[3] violations, and ineffective assistance of counsel.

Reed also asserts that attorney abandonment was an extraordinary circumstance beyond his control that prevented a timely filing. Reed moved for leave to conduct discovery in order to obtain "replacement case files, work product, lost subpoena materials, and media discovery" that he purportedly needed to present his federal grounds for habeas relief in any meaningful way. See ECF No. 3. In the Motion, Reed states that his appellate counsel never gave him the complete trial transcripts—he only gave Reed two days of the trial. After repeated requests, counsel sent a CD-ROM. Reed says that Ely State Prison ("ESP") staff denied him access to the disk. Reed includes two kites he submitted in April 2014 asking to review the disc. See id. at 18–19. On the first kite,

---

[3] Brady v. Maryland, 373 U.S. 83 (1963).

Reed states that it constitutes his third request to review the disk, which involves a time-sensitive issue. The response from ESP staff states: "You may contact your lawyer to review legal files. You are not allowed access to a computer at ESP." Id. at 18. Reed submitted a kite several days later and received the same answer. Id. at 19. The disk turned out to be blank. See id. at 2. Reed repeatedly asked appellate counsel to send him paper copies of the trial transcript. He also filed several motions in the Nevada Supreme Court seeking an order directing counsel to give Reed a copy of the transcripts. See id. at 23. He says he never received his entire trial record. Furthermore, he claims that another inmate drafted his state post-conviction habeas petition on his behalf and that they could only communicate by "yelling through the cracks of cell doors" because they were never allowed to be the same room. See id. at 3. The other inmate drafted the state petition while Reed's direct appeal was pending and without access to the trial transcripts. So the state petition was based on Reed's limited recollections of the trial. He also states that NDOC employees "lost and/or destroyed" some of his legal materials. See id. at 5.

The Court finds Reed has demonstrated that extraordinary circumstances interfered with his ability to timely file his claims and that he was diligent in his pursuit of federal relief. Respondents are correct that the original petition set forth no claims. See ECF No. 9. However, on this narrow set of specific facts, Reed has sufficiently established a causal relationship between the extraordinary circumstance and the lateness of his filings. See Bryant, 499 F.3d at 1061. The challenges of navigating law library access—while legitimate—generally do not rise to extraordinary circumstances. But here, Reed asserts that, despite his specific requests, his appellate attorney never provided a hard copy of Reed's case file or court transcripts for the eight-day jury trial and penalty phase. Counsel finally sent Reed a CD-ROM, but prison personnel told Reed repeatedly that he was not permitted to use a law library computer to access the files. And ultimately the CD-ROM proved to be blank. The Nevada appellate court rejected Reed's attempt to obtain an order directing appellate counsel to give him his case file and transcripts. See ECF No. 3 at 21-23. Both prison staff and the Nevada Supreme Court told Reed to contact his attorney for his legal materials, so he was trapped in a circle of inaction. Kites and exhibits provided by Reed support his assertions. He also filed motions for relief in this Court, reiterating that he had

1   been unable, despite numerous and varied attempts, to get his case file and transcripts. See, e.g.,

2   ECF Nos. 1-2, 3. Reed has sufficiently demonstrated diligence. The Court grants Reed equitable

3   tolling up to the filing of the First Amended Petition.

### C. Ground 1 and Actual Innocence

5       Respondents argue that some grounds in the Second Amended Petition are unexhausted,

6   untimely and/or procedurally barred.[4] See ECF Nos. 101, 122. In ground 1, Reed argues that his

7   conviction was based on uncorrected, false material evidence in violation of his due process rights.

8   See ECF No. 89 at 29–35. Reed acknowledges that this is a new claim that is both untimely and

9   unexhausted. See ECF No. 89 at 28–29. He contends that he can overcome state procedural bars

10  to this claim because he is actually innocent.

### 1. Legal Standards

12      Nevada's state procedural bars are NRS 34.726, 34.800, and 34.810.[5] The application of

13  the procedural bars is mandatory. A petitioner may overcome the bars in NRS 34.726 and 34.810

14  by demonstrating good cause and actual prejudice. See NRS 34.726(1), 34.810(4). A petitioner

15  may overcome all of the bars by demonstrating actual innocence, such that a fundamental

16  miscarriage of justice would result were the underlying claims not heard on the merits. See NRS

17  34.800(1)(b); Pellegrini v. State, 34 P.3d 519, 537 (Nev. 2001). Nevada has also created a

18  mechanism to assert factual innocence by way of a petition under NRS 34.900–34.990.

19      The Supreme Court has also held that a claim of actual innocence can overcome a

20  procedural bar. See McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). A petitioner must meet the

21  "actual innocence" gateway established in Schlup v. Delo, 513 U.S. 298 (1995). See McQuiggin,

22  569 U.S. at 386. However, "tenable actual-innocence gateway pleas are rare," with "demanding"

23  standards that are "seldom met." Id. (citations omitted). These exceptions are rare because they

24  must be based on actual, factual innocence, not mere legal insufficiency. See id.; Sawyer v.

25  Whitley, 505 U.S. 333, 339 (1992).

26  _____

        [4] Because Reed argues that actual innocence should excuse any procedural bars, it serves as a pivotal,
27  threshold issue for all his claims. As the Court explains below, Reed will have the opportunity to file a motion to stay,
    and the Court will not consider Respondents' arguments that other grounds are untimely, unexhausted and/or
    procedurally barred at this time.
28      [5] These statutory bars are based on untimeliness, undue delay in filing, successive petitions, and claims that
    should have been raised on direct appeal or in an earlier state post-conviction habeas petition.

1      Overall, the miscarriage of justice exception applies "to a severely confined category: cases

2   in which new evidence shows 'it is more likely than not that "no reasonable juror" would have

3   convicted [the petitioner].'" McQuiggin, 569 U.S. at 394–95 (alteration in original) (quoting

4   Schlup, 513 U.S. at 329). "The gateway should open only when a petition presents 'evidence of

5   innocence so strong that a court cannot have confidence in the outcome of the trial unless the court

6   is also satisfied that the trial was free of nonharmless constitutional error.'" Id. at 401 (quoting

7   Schlup, 513 U.S. at 316). Further, "[u]nexplained delay in presenting new evidence bears on the

8   determination whether the petitioner has made the requisite showing." Id. at 399.

9      Thus, to demonstrate actual innocence, a petitioner must show that in light of the new

10  evidence, no juror acting reasonably would have found the petitioner guilty beyond a reasonable

11  doubt. See id. at 399; Schlup, 513 U.S. at 329; see also Griffin v. Johnson, 350 F.3d 956, 963 (9th

12  Cir. 2003) ("newly presented" evidence, not just newly discovered evidence, qualifies as "new

13  evidence"). The petitioner must "support his allegations of constitutional error with new reliable

14  evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

15  critical physical evidence—that was not presented at trial." Schlup, 513 U.S. 324. Because such

16  evidence is unavailable in the vast majority of cases, "claims of actual innocence are rarely

17  successful." Id. After all, bare allegations unsupported by evidence do not tend to establish actual

18  innocence sufficient to overcome a procedural default. See Thomas v. Goldsmith, 979 F.2d 746,

19  750 (9th Cir. 1992). Thus, "[t]he Schlup standard 'is demanding,' . . . and precedents holding that

20  a habeas petitioner satisfied its strictures have typically involved dramatic new evidence of

21  innocence." Larsen v. Soto, 742 F.3d 1083, 1095–96 (9th Cir. 2013) (citation omitted).

22      If a petitioner does present new evidence, the habeas court must then "consider[s] *all the

23  evidence*, old and new, incriminating and exculpatory," admissible at trial or not. House v. Bell,

24  547 U.S. 518, 538 (2006) (citation and quotation marks omitted; emphasis added). "On this

25  complete record, the court makes a probabilistic determination about what reasonable, properly

26  instructed jurors would do." Lee v. Lampert, 653 F.3d 929, 938 (9th Cir. 2011) (quotation marks

27  omitted) (quoting House, 547 U.S. at 538; Schlup, 513 U.S. at 329).

28      "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v.

U.S., 523 U.S. 614, 623 (1998) (citation omitted). The petitioner must show the constitutional error complained of probably resulted in the conviction of an actually innocent person to prove a "miscarriage of justice." Boyd v. Thompson, 147 F.3d 1124, 1127 (9th Cir. 1998) (citation omitted). This is a narrow exception and is reserved for extraordinary cases only. See House, 547 U.S. at 538; Sawyer, 505 U.S. at 340. It is not enough that the new evidence shows the existence of reasonable doubt; rather the petitioner must show, by a preponderance of the evidence, that the evidence in support of conviction was so weak that no reasonable juror would have convicted them. See Lorentsen v. Hood, 223 F.3d 950, 954 (9th Cir. 2000); see also Schlup, 513 U.S. at 329.

### 2.  *Additional Evidence*

Reed argues that new evidence shows that Jaffar Richardson testified falsely at the preliminary hearing. See ECF No. 110 at 14–17. Richardson was unavailable for Reed's trial, and the State read his preliminary hearing testimony into the record. See ECF No. 46-1 at 44–93. Richardson had testified that he, Reed, and Deyundrea Holmes planned to rob the victim (Nelson), who was known to carry large amounts of cash. The day of the murder, Richardson called Nelson to try to ascertain when Nelson would be at his recording studio. Richardson said the plan was that Reed and Holmes would lie in wait for Nelson at the studio. He said that hours later in the middle of the night Reed called him and told him that things had gone bad.

With his Second Amended Petition, Reed attached the declaration of FPD investigator Maribel Yanez. See ECF No. 90-8. She states that in August 2021, she interviewed Richardson in person where he was in custody at Northern Nevada Correctional Center. Richardson told Yanez that he knew Reed and Holmes at the time of Nelson's death. He said he did not have conversations with Reed and Holmes prior to Nelson's death—or their conspiracy to rob, murder, or hurt him in any way. He said that, to date, he did not know who killed Nelson. When Richardson was charged with crimes relating to Nelson's death, he was also facing unrelated charges. The prosecutor told him that unless he testified against Holmes and Reed, the prosecutor would charge Richardson and another individual with conspiracy to commit the Nelson murder. Richardson said he agreed to testify in exchange for a more lenient sentence.

///

1    Richardson identified a letter that he said he wrote to Holmes in June 2019. Yanez attached

2    the letter, in which Richardson apologized and stated that he knew that Holmes was not involved

3    in Nelson's murder. See id. at 4-5. Richardson wrote that the prosecutor "fed" him a scenario and

4    told him that "if [he] didn't lie on you and Max Reed" that the prosecutor would charge Richardson

5    with the murder and he "would never get out of jail." Id. at 4.

6                                    ***3. Analysis***

7    Reed argues that this is new evidence of actual innocence that shows that applying the

8    procedural bars to his claims would result in a fundamental miscarriage of justice. See Schlup, 513

9    U.S. at 314–317. Respondents point out that if Reed can demonstrate actual innocence that would

10   then excuse the state bars, and the state courts could consider federal ground 1 (and any other

11   claims that would otherwise be procedurally barred from state court review). So Reed has not

12   argued that he has no available state-court remedy.

13   This Court granted the FPD's motion to stay this case in June 2020, during the height of

14   the COVID-19 Pandemic, because strict limitations on inmate visitation were in place and Nevada

15   safety guidelines impacted the FPD's ability to investigate the case and prepare an amended

16   petition. See ECF No. 80. Investigator Yanez interviewed Richardson in August 2021. The FPD

17   then returned to this Court in February 2024, with a motion to reopen the case as well as the Second

18   Amended Petition. See ECF Nos. 88, 89. Reed has never returned to state court to present his

19   actual innocence claim, together with the Yanez declaration and the letter allegedly sent by

20   Richardson to Holmes.

21   Ground 1 is unexhausted, and the threshold issue now is whether Reed can demonstrate

22   actual innocence such that procedurally barring his claims would result in a fundamental

23   miscarriage of justice. In fact, Reed argues that, if ground 1 is unexhausted, he would have to move

24   for a stay and abeyance of his federal petition while he returns to state court to present his

25   unexhausted claims. See ECF No. 110 at 53–54. A federal court may not entertain a habeas petition

26   unless the petitioner has exhausted available and adequate state court remedies with respect to all

27   claims in the petition. See Rose v. Lundy, 455 U.S. 509, 510 (1982). An unexhausted petition or a

28   "mixed" petition containing both exhausted and unexhausted claims is subject to dismissal. See

1    id.; Mena v. Long, 813 F.3d 907, 911 (9th Cir. 2016). But a district court has discretion to stay a

2    mixed or wholly unexhausted petition. See Rhines v. Weber, 544 U.S. 269, 277–78 (2005); Mena,

3    813 F.3d at 911.

4          If Reed wishes to ask for a stay, he must file a motion for stay and abeyance in which he

5    demonstrates good cause for his failure to exhaust ground 1 in state court and presents argument

6    regarding the question of whether or not the claim is plainly meritless.[6] Respondents would then

7    have an opportunity to respond and Reed to reply. Because the Court is giving Reed the

8    opportunity to file a motion to stay, the Court denies the Motion to Dismiss without prejudice. If

9    Reed elects not to move for a stay, or this Court denies a motion to stay, Respondents would be

10    able to file a renewed motion to dismiss. The Motion for Hearing is also therefore denied without

11    prejudice.

12    ///

13    ///

14    ///

15    ///

16    ///

17    ///

18    ///

19    ///

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28

---

[6] If Reed's actual innocence claim prevails in state court, that may render this federal petition moot.

III.    **CONCLUSION**

Therefore, **IT IS HEREBY ORDERED** that Respondents' Motion to Dismiss (ECF Nos. 98, 101)[7] is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Reed has 30 days to file a motion for a stay and abeyance, if any, asking this Court to hold his federal petition in abeyance while he returns to state court to exhaust his unexhausted claims. If Reed chooses to file a motion for a stay and abeyance, or seek other appropriate relief, Respondents may respond according to Local Rule 7-2.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Leave to File Excess Pages (ECF No. 111) is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Hearing (ECF No. 112) is **DENIED** without prejudice.

**DATED:** December 29, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**

---

[7] While the docket shows the Motion to Dismiss as ECF No. 98, respondents inadvertently filed a different document there. The corrected motion is found at ECF No. 101.